# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DARYL GREEN,                                      *
                                                 *
        Plaintiff,                               *
                                                 *
v.                                               *          Civil No. **PJM 17-732**
                                                 *
ROSENBERG & ASSOCIATES,                          *
LLC, *et al.*,                                   *
                                                 *
        Defendants.                              *

## MEMORANDUM OPINION

*Pro Se* Plaintiff Daryl Green has sued Mark D. Meyer, John A. Ansell, III, Kenneth Savitz, Caroline Fields, Jennifer Rochino, and the law firm that employs or employed them, Rosenberg & Associates (collectively the "Rosenberg Defendants"), as well as Wilmington Savings Fund Society, FSB, as Trustee for Primestar-H Fund I Trust ("Wilmington"), Statebridge Company, LLC ("Statebridge"), PROF-2014-S2 Legal Title Trust II, by U.S. Bank National Association as Legal Title Trustee ("U.S. Bank"), and Fay Servicing, LLC ("Fay Servicing"). He alleges violations of several consumer protection statutes under both federal and state law relating to a foreclosure proceeding in the Circuit Court for Prince George's County initiated against his residence at 15416 Cedar Drive, located in Accokeek, Maryland (the "Property").[1]

Several motions are pending before the Court. Each Defendant has filed a Motion to Dismiss the case. ECF Nos. 16, 20, 24, 46. In opposition, Green has filed a Motion for Summary Judgment and Request for Oral Argument. ECF No. 35. Defendants Fay Servicing and U.S.

---

[1] Green attempted to remove to this Court the underlying state foreclosure proceeding in Case No. 17-1379, which the Court dismissed on December 28, 2017, as improperly removed. *See Rosenberg v. Green et al.*, No. 17-cv-1379, ECF Nos. 58, 59 (D. Md. Dec. 28, 2017).

Bank have filed a Motion to Strike Plaintiff's Motion for Summary Judgment. ECF No. 38. Defendants Statebridge and Wilmington have filed a Motion to Strike Plaintiff's Affidavit. ECF No. 56.

For the reasons that follow, the Court **GRANTS** all the pending Motions to Dismiss, ECF Nos. 16, 20, 24, 46. Green's Motion for Summary Judgment and Request for Oral Argument is **DENIED.** ECF No. 35. All other motions are **MOOT.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Rosenberg Defendants as Substitute Trustees brought a foreclosure proceeding against the Property in the Circuit Court for Prince George's County in June 2015. Nearly two years after the initiation of the foreclosure action, on March 17, 2017, Green filed the present suit in federal court. ECF No. 1. He alleges that he owns the Property in fee simple and is in possession of a mortgage note "marked canceled." *Id.* ¶ 58. He further claims that the notes Defendants assert they possess are "fraudulent" because they are not the notes he signed and, in fact, are different from the canceled note in his possession. *Id.* ¶ 61. In effect, he says, Defendants are attempting to "steal his home" by means of a fraudulent foreclosure proceeding. *Id.*

While Green spends numerous paragraphs of the lengthy Complaint discussing Defendants' business practices generally, his Complaint is largely devoid of details that shed light on the relationship of each Defendant to Green's underlying loan, leaving the Court struggling to determine the timeline of events and relationship of the parties. However, based on the numerous attachments submitted in subsequent filings by both Green and the Defendants, it appears that Wilmington is the current owner of the mortgage note, having been assigned it by U.S. Bank following several previous transfers. ECF No. 35-1 at 6, 17-22.   Defendants Fay

Servicing and Statebridge appear each to have been the loan servicers at different points in time. *Id.*

Green alleges seven causes of action against all Defendants. These include: 1) violations of the Federal Trade Commission Act ("FTC Act") and the Consumer Financial Protection Act ("CFPA"); 2) violations of the Fair Debt Collection Practices Act ("FDCPA"); 3) violations of the Fair Credit Reporting Act ("FCRA"); 4) violations of the Real Estate Settlement Procedures Act ("RESPA"); 5) violations of the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Collection Agency Licensing Act ("MCALA"); 6) intentional infliction of emotional distress; 7) violations of the civil Racketeer Influenced and Corrupt Organization ("RICO") statute.

Green requests an injunction barring Defendants from further violating the statutes; an injunction prohibiting Defendants from doing business in the State of Maryland; an injunction preventing the underlying foreclosure action from moving forward; and damages in the amount of $10 million plus costs. ECF No. 1 ¶ 203.

Shortly after filing his Complaint, on March 28, 2017, Green filed an Emergency Motion to Stay the Foreclosure Sale (ECF No. 4), which the Court denied. The Court has previously denied Green's Motion to Appoint Counsel in this case. ECF No. 30.

On April 25, 2017, Green filed a copy of the purported "canceled note" with an affidavit attesting to its authenticity. ECF No. 12. The note attached to the affidavit, entitled "Balloon Note," is in the amount of $159,000.00 and is signed only by Green. *Id.* The last page of the note appears to be stamped "Cancelled" without any indication of when or by whom. *Id.* Green's affidavit does not volunteer any of these missing details. *Id.*

Defendants have all filed motions asking the Court to dismiss the Complaint for failure to state a claim. *See* ECF Nos. 16, 20, 24, 46. Green opposes the motions and, in response, asks the Court grant summary judgment in his favor. ECF No. 35.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). However, "[a] plaintiff does not satisfy Rule 8 when the complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.'" *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (quoting *Appalachian Enterprises, Inc. v. Epayment Solutions Ltd.,* 2004 WL 2813121, at *6 (S.D.N.Y.2004)).

Additionally, claims for fraud must meet the heightened pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, a plaintiff alleging claims that sound in fraud must, at a minimum, describe the "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (internal quotation marks omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). But this standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a

court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In the end, the Complaint must contain factual allegations sufficient to apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

While federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted). The Fourth Circuit has noted that "[w]hile *pro se* complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)). Accordingly, although the facts alleged in a plaintiff's complaint must be taken as true, bare conclusory statements "are not entitled to the assumption of truth." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679)) (internal quotation marks omitted).

# III.    ANALYSIS

Because Defendants make similar arguments in their pending Motions to Dismiss,[2] the Court will consider those motions collectively as they pertain to each of Green's claims before turning to the other pending motions.

## A.  Motions to Dismiss

### a)  *Count One: FTC Act and CFPA Violations*

Count One is easily dismissed at the outset. Neither the FTC Act nor the CFPA provide a consumer with a private right of action. "[I]t has consistently been held that enforcement of the FTC Act is vested exclusively with the FTC, and that 'private actions to vindicate rights asserted under the Federal Trade Commission Act may not be maintained.'" *Betskoff v. Enter. Rent A Car Co. of Baltimore, LLC*, 2012 WL 32575, at *7 (D. Md. Jan. 4, 2012) (quoting *Holloway v. Bristol–Myers Corp.,* 485 F.2d 986, 987 (D.C. Cir. 1973)). Similarly, the CFPA is to be enforced by the Consumer Financial Protection Bureau and does not provide private citizens with a private right of action. *See, e.g.*, *Rupli v. Ocwen Loan Servicing, LLC*, 2016 WL 4141013, at *3 n.5 (D. Md. Aug. 4, 2016); *Kalisz v. Am. Express Centurion Bank*, 2016 WL 1367169, at *2 (E.D. Va. Apr. 5, 2016). Indeed, the statute states that "*The Bureau* may take any action authorized under Part E . . . ." 12 U.S.C. § 5531(a) (emphasis added). Accordingly, "various courts have concluded that there is no private right of action to enforce 12 U.S.C. §§ 5531 and 5536(a)." *McCray v. Bank of Am., Corp*., 2017 WL 1315509, at *16 (D. Md. Apr. 10, 2017) (citing cases).

Because Green may not sue to enforce either of these Acts, Count One is dismissed with prejudice against all Defendants.

---

[2] The Rosenberg Defendants incorporate the arguments made in Defendants Fay Servicing's and U.S. Bank's Motion. ECF No. 20-1. Though Wilmington notes that service upon it was improper, it states that it has appeared voluntarily and joins in Statebridge's Motion. ECF No. 46-2 at 3.

*b)* <u>*Count Two: FDCPA Violations*</u>

In Count Two of his Complaint, Green alleges that Defendants are violating the FDCPA because they "acquire[d] servicing rights to some mortgages that are in default at the time of transfer and proceed to collect on those mortgages." ECF No. 1 ¶ 89. He alleges that Defendants are "debt collectors" within the meaning of the statute and, "in numerous instances, . . . have called consumers at unusual times or places, or times or places which it knew or should have known to be inconvenient to the consumers." *Id.* ¶ 70. Additionally, he alleges "in numerous instances," Defendants have participated in unauthorized communications with third parties, have disclosed debts to third parties, have made false or misleading representations to collect a debt, and have engaged in unfair acts regarding collection of amounts not authorized by the agreement or permitted by law.

Defendants respond that Green has failed to state a claim under the FDCPA. Specifically, Defendants U.S. Bank and Fay Servicing argue that they are not "debt collectors" under the Act because they are creditors collecting on a debt for their own account. ECF No. 16-1 at 9 (citing *Reyes v. Bank of America*, Civil No. PJM 12-3798, 2013 WL 6012504, at *2 (D. Md. Nov. 12, 2013)). Even if they were debt collectors under the FDCPA, they say Green's claim still fails because he has not alleged any conduct specific to them that violates the statute. *Id*. at 10. The other Defendants echo this argument, noting that general allegations against "Defendants" as a group without identifying specific conduct attributable to a specific Defendant is insufficient to state a claim for relief. *See* ECF No. 20-1 at 1 (Rosenberg Defendants "join in Defendants [Fay and U.S. Bank's] Motion to Dismiss"); ECF No. 24-2 at 2, 5-6 (noting that "Statebridge is simply lumped together with the rest of the 'Defendants'"); ECF No. 46-2 at 1 (Wilmington "incorporates by reference the Motion to Dismiss filed by Statebridge").

The Court agrees with Defendants. "To succeed on a FDCPA claim a plaintiff must demonstrate that '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012). "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors.'" *Reyes v. Bank of Am., N.A.*, 2013 WL 6012504, at *2 (D. Md. Nov. 12, 2013) (quoting 15 U.S.C. § 1692(e)). However, creditors, mortgagees, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA. *Id.* (citing *Scott v. Wells Fargo Home Mortgage Inc.,* 326 F. Supp. 2d 709, 717 (E.D.Va.2003) *aff'd,* 67 F. App'x 238 (4th Cir. 2003)).

In his Complaint, Green fails to allege which Defendants, if any, are debt collectors under the FDCPA. In fact, it is difficult to discern the relationship of the Defendants to Green during the relevant time period of his loan. Though he alleges that "Defendants" are debt collectors because they acquired servicing rights to his mortgage when it was in default, ECF No. 1 ¶ 89, in the Fourth Circuit, the default status of a loan has no bearing on whether a person qualifies as a debt collector under § 1692a(6). *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135 (4th Cir. 2016). Rather, the inquiry turns on whether a person collects a debt on behalf of others or for his own account. *Id.* If a person is collecting for his own account, that person is a creditor, not a debt collector, for purposes of the FDCPA. *Id.* at 138. Green has not identified which Defendant, if any, is collecting a debt for another such that it is plausibly a debt collector under the FDCPA.

But that is not Green's only problem. The Complaint also lacks any factual allegation, if proven, that would plausibly establish that Defendants have engaged in any act prohibited by the

FDCPA. To the contrary, the Complaint contains only conclusory allegations of various acts by "Defendants" that largely parrot the language of the statute without providing specific details regarding Green's own debt. *See Hill v. Wilmington Fin., Inc.,* 2013 WL 4659704, at *4 (D. Md. Aug. 29, 2013) (dismissing plaintiff's claim that lacked detail regarding "time, dates, conduct or actors involved in any violation of the FDCPA"). The closest Green comes to citing specific examples is in paragraphs 103 and 120 of his Complaint, where he states that "Defendants, directly or indirectly, [have] incessantly called despite receiving cease and desist demands from Mr. Green with intent to, annoy, abuse, or harass him at the called numbers, and the natural consequence of such calls has been to harass, oppress, or abuse persons." ECF No. 1 ¶ 103. In paragraph 120, he states "Defendants" have violated § 1692(e) by "communicating with Mr. Green directly and indirectly and pursuing litigation and demanding sums not validly due from Mr. Green based upon false, deceptive, and misleading communications as described above and maintain this and other foreclosure actions in Maryland Courts against Green." *Id.* ¶ 120. However, these labels and conclusions, without any factual allegations, do not support a plausible claim for relief.

Accordingly, Claim Two will be dismissed with prejudice against all Defendants.

c) *Count Three: Violations of the FCRA*

Count Three of the Complaint, alleging violations of the FCRA, suffers from similar defects. The only specific reference to Green's loan alleged in this Count is that "[i]n numerous instances in which Defendants ha[ve] furnished to a consumer reporting agency information that it was not legally allowed to report as they knowingly and falsely 'verified' to the reporting agencies that their ownership in Mr. Green's loan was valid despite Mr. Green's multiple filed disputes." *Id.* ¶ 133.

As an initial matter, the Court notes that individuals may not bring private suits to enforce § 1681s-2(a). *See* 15 U.S.C. § 1681s-2(c) (stating that civil liability does not accrue for violations of section 1681s-2(a)); *see also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008) ("FCRA explicitly bars private suits for violations of § 1681s-2(a).").

To the extent Green asserts a claim under § 1681s–2(b), he still fails to meet his burden. 15 U.S.C. § 1681s-2(b) imposes duties upon furnishers of credit information upon being provided notice of a dispute of the completeness or accuracy of any information provided to a credit reporting agency, including: (A) conducting an investigation with respect to the disputed information; (B) reviewing all relevant information provided by the consumer reporting agency; (C) reporting the results of the investigation to the credit reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, reporting those results to all other credit reporting agencies to which it furnished the original information. Accordingly, "[t]o state a claim under section 1681s–2(b), a plaintiff must allege, *inter alia,* that after he or she notified the consumer reporting agency of a dispute, the agency notified the defendant furnisher of information of the dispute, after which defendant failed to adequately investigate; notice by a consumer directly to the furnisher of the information does not trigger the furnisher's duties under section 1681s–2(b)." *Craighead v. Nissan Motor Acceptance Corp.*, 2010 WL 5178831, at *4 (E.D. Va. Dec. 14, 2010), *aff'd,* 425 F. App'x 197 (4th Cir. 2011); *see also Ausar-El v. Barclay Bank Delaware*, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).

Again, Green falls far short of even the minimal pleading requirements here. In addition to lumping Defendants together and reciting conclusory allegations that merely mimic the wording of the statute, he does not allege that he informed any credit reporting agencies of his dispute or that any credit agencies notified Defendants of his dispute.

His FCRA claim has no traction.  It is dismissed with prejudice.

*d)* *Count Seven: Civil RICO*

Turning to Count Seven of the Complaint, Green's Civil RICO claim is also quickly disposed of.  In this Count, he alleges that Defendants have participated in an illegal racketeering enterprise whose "primary objective" is to "inflict severe and sustained economic hardship on Plaintiff with the intent of impairing, obstructing, preventing and discouraging Plaintiff and similarly situated consumers in the State of Maryland from enjoyment of their piece of the American Dream of home ownership." ECF No. 1 ¶ 186.

As with the other allegations, all Defendants move for dismissal based on insufficient pleading of facts to support such a claim.

The Court agrees that Green's RICO claim is similarly lacking sufficient detail to get him through the litigation gate. "In order for a civil RICO claim to survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege '(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering.'" *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 588 (D. Md. 2014) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To state a plausible claim of a pattern of racketeering, a plaintiff must adequately plead at least two predicate acts that are related and amount to a threat of continued criminal activity. *Id.* at 592-93, 599. Additionally, a plaintiff must plead proximate cause, i.e., that he was injured "by reason of" the RICO violation. *Id.* at 588 (quoting *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010)).

Containing only "threadbare recitals of the elements," Green's RICO claim does not even meet the minimum pleading requirements of Rule 8, let alone the heightened standard under Rule 9 applicable to allegations sounding in fraud. Indeed, the Complaint is completely devoid of

any facts—such as times, places, and dates, to name a few—to state a plausible claim for relief under the civil RICO statute.

This claim is dismissed with prejudice.

e) *Count Four: RESPA Violations*

Green comes closer to stating a cognizable claim with respect to Count Four where he argues that Defendants Fay Servicing and Statebridge[3] violated RESPA by failing to adequately respond to his qualified written requests ("QWRs"). ECF No. 1 ¶¶ 144-49. He alleges he sent both Fay Servicing and Statebridge QWRs through his attorney in September 2015. *Id.* ¶ 148. Statebridge did not respond and Fay Servicing allegedly responded by providing the contents of the pending foreclosure action and a copy of the purported note. *Id.* Green alleges he then sent a second round of QWRs in March 2016. *Id.* This time, Fay Servicing apparently responded by providing another note, different from the one it previously provided and Statebridge responded by stating it was no longer associated with the loan. *Id.* Thus, Green claims Defendants "failed to acknowledge receipt of his QWRs within 5 days and/or correct account errors or conduct investigations within 30 days in violation of RESPA." *Id.* ¶ 149. Though he has stated more specific factual allegations here, this does not save his claim.

"RESPA mandates good faith estimates and disclosure of settlement terms and interest rates from lenders in order to allow consumers to evaluate whether they can afford all aspects of their loan." *Minson v. CitiMortgage*, *Inc*., 2013 WL 2383658 (D. Md. May 29, 2013) (quoting *Fedewa v. J.P. Morgan Chase Bank, Nat. Ass'n*, 921 F. Supp. 2d 504, 510 (E.D.V.A. 2013)). 12 U.S.C. § 2605(e) states that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower . . . for information relating to the servicing of such loan, the servicer

---

[3] Although this claim appears to be made against all Defendants, these are the only two defendants specifically mentioned in the Count. Accordingly, the Court dismisses this claim with prejudice to the extent it pertains to the Rosenberg Defendants, Defendants U.S. Bank, and Wilmington at the outset.

shall provide a written response acknowledging receipt of the correspondence within 5 days."
§ 2605(e)(1)(A). A QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). Creditors have thirty days following the receipt of a QWR to make requested changes to the borrower's account, notify the borrower of the results of any investigation pertaining to the account, and transmit the name and telephone number of a representative who can answer any questions about the account. § 2605(e)(2).

However, "courts have drawn a distinction between communications related to the servicing of the loan, which are covered under RESPA, and those challenging the validity of a loan, which are not." *Minson v. CitiMortgage, Inc.,* 2013 WL 2383658, at *4 (D. Md. May 29, 2013). When the "thrust of the request is to challenge [the defendant's] authority 'to proceed with collection activities (including foreclosure),'" Judges in this District have found the document fails to qualify as a QWR. *Id.*; *see also Ayres v. Ocwen Loan Servicing, LLC,* 129 F. Supp. 3d 249, 265 (D. Md. 2015) ("Courts have held that allegations and requests for documents that relate to the validity of the loan and do not attack the servicing of the loan are not QWRs under RESPA."). Correspondence that merely requests documents to verify the underlying loan indicates that it does not relate to the servicing of the loan. *Minson,* 2013 WL 2383658, at *4.

In view of these requirements, it is clear that Green's RESPA allegation suffers from several defects. Nowhere does he allege who the servicer of his mortgage was at the time he

allegedly sent the two QWRs. Nor has he established that his correspondence qualified as a QWR rather than a letter simply disputing the validity of the loan. Merely stating that the correspondence he sent was a QWR does not make it so. Bare conclusory allegations are not entitled to the assumption of truth, even at the Motion to Dismiss stage. *See Aziz*, 658 F.3d at 391. Green has not attached the alleged QWRs to the Complaint nor has he provided them in his numerous other filings as far as the Court can tell. In fact, it seems that the thrust of Green's grievance is not the servicing of the loan, but the validity of the underlying note itself.

Even if the Court were to liberally construe the Complaint to plausibly allege the communications were QWRs, Green's RESPA claim would still fall short. A plaintiff must allege that he suffered actual harm from the failure to respond or that the defendant has a pattern or practice of noncompliance. *Ayres*, 129 F. Supp. 3d at 266; 12 U.S.C. § 2605(f). Here, Green seeks injunctive relief, which, as Defendants suggest, is "unavailable in RESPA private actions." *Minson*, 2013 WL 2383658, at *5.

Green's RESPA claim is dismissed with prejudice.

### f) *Counts Five and Six: State Law Claims under MDCPA and MCALA; IIED*

Counts Five and Six arise under Maryland state law. Green filed the lawsuit on the basis of federal question jurisdiction, *see* ECF No. 1 ¶ 2; ECF No. 1-1 (civil cover sheet), and at least one Defendant appears to be a citizen of Maryland,[4] defeating the requirement of complete diversity of citizenship necessary to establish original jurisdiction. Having dismissed all of the federal claims, the Court, as a matter of discretion, chooses not to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has

---

[4] The Court remanded the removed foreclosure proceeding to state court, Civ. No. 17-1379, in part because Green had not established diversity jurisdiction as to the Rosenberg Defendants, four of whom asserted they are Maryland citizens and are also named Defendants here. *See Rosenberg v. Green et al.*, No. 17-cv-1379, ECF Nos. 52, 58.

dismissed all claims over which it has original jurisdiction."); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims"). The Court believes this to be appropriate at this early stage, especially where it appears Green is engaged in nothing more than an attempt to collaterally attack the foreclosure of his home, a proceeding that is currently being litigated in state court. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (internal footnotes omitted), *superseded by statute in* 28 U.S.C. § 1367(c)(3).

Accordingly, except as to the federal counts, which are being dismissed with prejudice, the remainder of the Complaint will be dismissed without prejudice as to all Defendants.[5]

## B.  Remaining Motions

Having granted the Motions to Dismiss, the remaining motions are easily disposed of.

Summary judgment will be granted where "there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party." *Willingham v. Crooke*, 40 F. App'x 850, 851 (4th Cir. 2002). Because Green has failed to state a claim sufficient to survive a motion to dismiss, he obviously is not entitled to judgment as a matter of law. His Request for Summary Judgment and Oral Argument is therefore **DENIED.**

---

[5] However, if within ten days, Green files with the Court the original of the purported cancelled note, or a copy of the note, certified by a duly authorized notary public, along with an affidavit by Green affirming, under the penalties of perjury, when the note was paid off as well as how, when, and by whom it was cancelled, the Court may reconsider its rulings herein.

The remaining Motions to Strike are **MOOT.**

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Fay Servicing's and U.S. Bank's Motion to Dismiss (ECF No. 16); Rosenberg Defendants' Motion to Dismiss (ECF No. 20); Defendant Statebridge's Motion to Dismiss (ECF No. 24); and Defendant Wilmington's Motion to Dismiss (ECF No. 46). Green's Motion for Summary Judgment and Request for Oral Argument (ECF No. 35) is **DENIED.**   The remaining Motions to Strike (ECF Nos. 38, 56) are dismissed as **MOOT.**

A separate Order will **ISSUE**.


                                                    _____/s/_____

                                                    **PETER J. MESSITTE**
                                                    **UNITED STATES DISTRICT JUDGE**

**March 7, 2018**